1
2
3
4
5
6
7
8
9
10

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

11

BRANDON HARRIS,                          CASE NO. 21-CV-01536-LK

12                    Plaintiff,           ORDER GRANTING IN PART
          v.                               AND DENYING IN PART
                                           MOTION FOR SANCTIONS
13     JFC INTERNATIONAL INC., et al.,

14                    Defendants.

15

16          This matter comes before the Court on the parties' LCR 37 Joint Submission Regarding

17   Plaintiff's Motion for Sanctions and Relief and Defendant's Opposition. Dkt. No. 26. Plaintiff

18   Brandon Harris seeks monetary sanctions pursuant to Federal Rule of Civil Procedure 37(c)(1) and

19   the Court's inherent powers for Defendant JFC International's alleged discovery violations and

20   refusal to concede liability. He also asks the Court to exclude one of JFC International's newly

21   disclosed witnesses and rule on the admissibility of his accident reconstruction video. For the

22   reasons discussed below, the Court grants in part and denies in part the motion.

23

24

1

# I.   BACKGROUND

2      Harris was injured in October 2018 while working at a JFC International facility. Dkt. No.

3  1-1 at 2–3; Dkt. No. 26 at 2.[1] A fellow employee, Danny Ti, accidentally "pin[ned] him against a

4  wall" with a pallet jack and "crush[ed] . . . his lower extremities." Dkt. No. 1-1 at 3. In June 2021,

5  Harris sued JFC International in King County Superior Court for negligence, alleging that it failed

6  to properly train and supervise its employees, failed to properly maintain its pallet jacks, and failed

7  to maintain a safe working environment. *Id.* at 1. He also seeks to hold JFC International liable

8  under respondeat superior for Ti's alleged negligence. *Id.* Although JFC International admitted

9  that a pallet jack struck Harris, it denied that either the company or Ti acted negligently. Dkt. No.

10 26-1 at 25. And it raised as an affirmative defense that Harris's injuries "may have been caused,

11 either in whole or in part, by his own negligence or fault." *Id.* at 26. JFC International's answer

12 made clear that it would withdraw any factually unsupported affirmative defenses "after having

13 completed discovery in this case[.]" *Id.*

14      Harris served JFC International with his First Set of Interrogatories and Requests for

15 Production in August 2021. *Id.* at 3; *see* Dkt. No. 26-3 at 112–25. Below are the relevant

16 interrogatories and requests, along with JFC International's October 2021 responses:

17       **INTERROGATORY NO. 2:** As to the pallet jack referred to in your
         Answer to Plaintiff's complaint, please identify (a) the manufacturer, and its make,
18       model, and year, and (b) whether you contend it had any known defects which
         caused or contributed to the incident described in Plaintiff's Complaint.

19
         **ANSWER:** JFC is unaware of any defects with the pallet jack that caused
20       or contributed to the incident in question. Further, JFC is no longer in possession
         of the pallet jack involved in the incident at issue and therefore has no information
21       regarding its make, model or year.

22       **INTERROGATORY NO. 5:** Identify each person with whom you are
         aware that (a) witnessed the incident or the events occurring immediately before or
23       after the incident; and/or who (b) has first-hand knowledge regarding the facts and

24
---
[1] Harris was a contract laborer through SmartTalent. Dkt. No. 26-1 at 24.

ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR SANCTIONS - 2

circumstances of the incident or heard any statements made about the incident by any individual at the scene.

**ANSWER:**     Danny Ein Ti
                      Brandon Harris
                      Taiki Hanamoto

**INTERROGATORY NO. 15:** Does your answer to plaintiff's complaint set forth any affirmative defenses? If so, please state the facts upon which each affirmative defense is based.

**ANSWER:** Objection to the extent discovery is just beginning in this matter and the affirmative defenses asserted by the Defendants have been plead in order to not waive potentially applicable affirmative defenses. If, at the close of discovery in this matter, evidence is not discovered to support one or more of the asserted affirmative defenses, those affirmative defenses will be withdrawn following the close of discovery at the express written request of the Plaintiff.

**INTERROGATORY NO. 16:** Do you deny liability? If so, please state the facts supporting that denial.

**ANSWER:** Objection to the extent this Interrogatory seeks a pure legal conclusion with regard to liability. Without waiving said objection, a pallet jack operated by an employee of JFC came up behind Mr. Hanamoto and Mr. Harris and struck the left side of Mr. Harris's body.

**REQUEST FOR PRODUCTION NO. 1:** Please produce true and correct copies of any and all documents regarding the pallet jack referred to in your Answer to Plaintiff's Complaint, including all operator manuals and any materials from the manufacturer or seller regarding its safe operation and use and maintenance (including suggestions for inspections).

**RESPONSE:** JFC is no longer in possession of the pallet jack at issue and does not have an operator manual.

Dkt. No. 26-1 at 32–33, 36–38. In November 2021, shortly after serving its answers to Harris's first batch of interrogatories and requests for production, JFC International removed the action to federal district court. Dkt. No. 1.[2]

---

[2] JFC International admits in its Notice of Removal that it was served with a copy of Harris's complaint "on or about July 23, 2021." Dkt. No. 1 at 3. Under 28 U.S.C. § 1446(b)(1), a defendant generally has 30 days after service of the complaint to file a notice of removal. JFC International appears to suggest, however, that this case was not removable until October 15, 2021, when Harris's written discovery responses "revealed that [he] was a resident of the state of Virginia." *Id.*; *see* 28 U.S.C. § 1446(b)(3) (a defendant has 30 days to remove after service of an "amended pleading,

The parties began collaborating on a joint status report soon thereafter. In a December 2021 email exchange between Frank Steinmark (JFC International's counsel) and Alan Singer (Harris's counsel), Steinmark indicated that he removed from the joint status report all references to JFC International admitting liability. Dkt. No. 26-3 at 24 ("Frankly, I don't see this as a liability case, but I do not have approval from the client to admit liability at this time."). Singer nonetheless pressed for an admission of liability so that the parties could include a full panoply of the issues in the joint status report. *Id.* at 22. But Steinmark refused to budge. As he explained in his reply email, JFC International did "not feel comfortable conceding to liability . . . before any depositions [were] taken[.]" *Id.* ("[My client] has instructed me to not admit to liability without depositions. Once we conduct depositions, we can revisit liability.").

In three phone calls between January and April 2022, Steinmark allegedly represented to Singer that liability "would probably be admitted once Mr. Harris' deposition occurred." Dkt. No. 26-1 at 4 ("During this conversation, Mr. Steinmark said, 'I'm not sure you'll need to spend time on liability,' 'the only people who saw the incident were Brandon, Danny, and Taiki,' and after Brandon's deposition JFC is 'probably not going to fight liability,' but JFC wanted to depose Brandon first."); *see also id.* at 5 ("In this voice message, he said 'I anticipate that once the deposition of Harris is taken, my adjuster will be able to get authority to admit to liability.'"). Singer relied on this information in resolving not to depose Ti and Hanamoto until after JFC

---

motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable."). The problem with this argument is twofold. First, residency is not synonymous with citizenship for purposes of diversity jurisdiction. *See Kanter v. Warner-Lambert Co.*, 265 F.3d 853, 857 (9th Cir. 2001). And second, Harris's "residency" was apparent on the face of complaint. *See* Dkt. No. 1-1 at 1 ("Plaintiff is a resident of Newport News, State of Virginia."); *Tangletown, LLC v. Underwriters at Lloyd's, London*, No. C06-846C, 2006 WL 2781329, at *1 (W.D. Wash. Sept. 25, 2006) ("If the basis for removal is clear from the initial pleading, the notice of removal must be filed within thirty days of defendant's receipt of the complaint or service of summons."). JFC International's removal was therefore untimely. The Court, however, lacks authority to remand a case sua sponte for procedural defects. *Corona-Contreras v. Gruel*, 857 F.3d 1025, 1029 (9th Cir. 2017); *see* 28 U.S.C. § 1447(c) (a motion to remand based on procedural defects in removal must be made within 30 days after the defendant files its notice of removal).

International deposed Harris—a plan he communicated to Steinmark. *Id.* at 5; *see* Dkt. No. 26-3 at 28 ("[Y]ou would like to depose Brandon and then revisit liability at that point. You are collecting records and will want to depose Brandon after you have those. I will wait on deposing . . . Ti and Hanamoto until you have done that, as it may result in an admission of liability[.]").

Meanwhile, Harris retained DK Global to develop an animated recreation of the October 2018 pallet jack incident. Dkt. No. 26-1 at 5. The video was completed in December 2022 and provided to JFC International. *Id.* That same month, JFC International replaced Steinmark with a new counsel: Bob Christie. *Id.* at 6. Singer asked Christie to "(1) review prior interrogatory answers and supplement as needed, and (2) let [him] know if [JFC International] is contesting liability." *Id.* at 57. Christie promised to follow up on these issues. *Id.* at 56. In January 2023, Singer again asked Christie whether JFC International would "agree to avoid . . . further expense . . . [o]n the issue of liability" because its discovery responses and disclosures "revealed no basis to dispute liability." *Id.* at 6–7. Christie again indicated that JFC International was not prepared to admit liability. *Id.* at 7.

Harris thereafter served JFC International with his First Requests for Admission, Dkt. No. 26-3 at 127–35, Second Interrogatories and Requests for Production, *id.* at 105–10, and Third Interrogatories and Requests for Production, *id.* at 137–41; *see* Dkt. No. 26-1 at 7. These inquiries were angled at getting JFC International to concede liability or otherwise support with evidence its claim that Harris was at fault for the accident. *Id.* After receiving this latest batch of discovery requests, but before responding, JFC International deposed Harris. *Id.* When JFC International did not admit liability in the aftermath of his deposition, Harris hired Nick Barta—an expert on pallet jack operation and safety—to prepare an opinion on liability. *Id.* Singer also scheduled the depositions of Ti and Hanamoto for March 14 and 15, 2023. *Id.* at 8; *see* Dkt. No. 26-3 at 229–34.

Singer and Christie exchanged emails in late February 2023. There Singer expressed his frustration with JFC International's continued refusal to concede liability despite an alleged dearth of supporting evidence:

> JFC has [for] more than a year represented to me on at least two occasions that it would likely admit liability after [Harris's] deposition. Last week you indicated that representation is in fact no longer true. Yet . . . JFC has not provided any information to support its claim and defense that it is not liable for causing Mr. Harris' injuries and damages. This has forced us to incur significant costs and time.

Dkt. No. 26-1 at 60. Christie responded by disavowing knowledge of any discussions between his predecessor and Singer. *Id.* at 59. And he asserted his belief that the costs incurred to prove liability were simply part of the litigation: "Proving negligence is an element of your cause of action. To the extent that you are developing evidence to prove that element, that is part of litigation." *Id.*

On March 8, 2023, JFC International served its responses to Harris's discovery requests. It continued to deny liability but disclosed, for the first time, information on the pallet jack involved in the October 2018 accident. Below are the relevant requests, interrogatories, and responses:

> **REQUEST FOR ADMISSION NO. 5:** Admit that the person who operated the pallet jack who was working as an employee of JFC International, Inc. at the time of the incident failed to exercise reasonable care in the operation of the pallet jack in the incident.
>
> **ANSWER:** Defendant admits that Danny Ti, the operator of the pallet jack, was an employee of defendant and working in the course and scope of his employment when the accident occurred. Except as admitted, Request for Admission No. 5 is denied.
>
> **REQUEST FOR ADMISSION NO. 6:** Admit that, in the incident, the person who operated the pallet jack who was working as an employee of JFC International, Inc. at the time of the incident failed to operate the pallet jack in a safe manner in the incident.
>
> **ANSWER:** Defendant admits that Danny Ti, the operator of the pallet jack, was an employee of defendant and working in the course and scope of his employment when the accident occurred. Except as admitted, Request for Admission No. 6 is denied.

**REQUEST FOR ADMISSION NO. 7:** Admit that you lack evidentiary support for any claim that plaintiff's injuries or damages, if any, were caused, either in whole or in part, by his own negligence or fault.

**ANSWER:** Denied. There are issues of fact over whether Mr. Harris was inattentive to the moving pallet jack and/or whether he may have been in a recognized lane of travel for the equipment. Discovery is continuing.

**INTERROGATORY NO. 6:** If you denied any Fed. R. Civ. P. 36 request for admission, please state and identify the facts and basis for each request for admission you denied.

**ANSWER to RFA Nos. 7 and 11:** Defendant denies that it lacks evidentiary support that Plaintiff's injuries or damages were wholly caused by Defendant's actions based on issues of fact over whether Plaintiff was inattentive to the moving pallet jack and/or whether he may have been in a recognized lane of travel for the equipment.

**REQUEST FOR PRODUCTION NO. 1:** Please produce all documents, records, and all other materials relating to the training referred to in Interrogatory No. 1 above, and all documents, records, and all other materials that show the training conducted with regard to the driver of the pallet jack at issue in this incident[.]

**RESPONSE:** Please see Objections and Answer to Interrogatory No. 1. Please see documents previously produced. Please also see documents being produced, Crown PC 4500 Operator Manual, PC 4500 Series Specifications manual, JCF [sic] Injury and Illness Prevention Program, and three pallet jack photos[.]

**REQUEST FOR PRODUCTION NO. 2:** Please produce all documents, records, and all other materials relating to the supervision referred to in Interrogatory No. 2 above, or that [are] related to the supervision referred to [in] Interrogatory No. 2 above[,] including all documents, records, and all other materials relating to the supervision of the person who operated the pallet jack on the date of the incident.

**RESPONSE:** Please see Objections and Answer to Interrogatory No. 2. Please see documents previously produced. Please also see documents being produced, Crown PC 4500 Operator Manual, PC 4500 Series Specifications manual, JCF [sic] Injury and Illness Prevention Program, and three pallet jack photos[.]

*Id.* at 67–68, 77–78, 86.

This belated production of the pallet jack information prompted Singer to fire off an email to Christie demanding to confer "about JFC's most recent discovery violations, options to cure the prejudice caused by them, and possible stipulated or agreed solutions to avoid time[-]consuming motions on the issue." Dkt. No. 26-3 at 193. Singer's account of the ensuing phone call paints Christie as apologetic and unaware of the fact that JFC International never disclosed the pallet jack information: "Initially, Mr. Christie thought I or Mr. Harris had known the make and model of the pallet jack, as the [DK Global recreation] video 'did a good job[,]' . . . but by the end of the call he acknowledged we never knew this and JFC had never disclosed this before." Dkt. No. 26-1 at 10. Christie allegedly conceded that Harris "had not been treated fairly" during discovery and indicated that he would "review the matters discussed" before the parties conferred again on March 14, 2023. *Id.* (internal quotation marks omitted); *see also* Dkt. No. 26-3 at 199 ("I have a clear understanding and appreciation for much of your frustration expressed in our call. As we discussed, I am actively reviewing all of our discovery responses and production and look forward to discussing these with you in a Zoom call[.]").

On March 14th, just before the parties' scheduled Zoom meeting, Christie emailed Singer JFC International's Second Supplemental Answers and Responses to Plaintiff's First Interrogatories and Requests, Dkt. No. 26-1 at 90–97, First Supplemental Responses to Plaintiff's First Requests for Admission, *id.* at 99–105, and First Supplemental Answers and Responses to Plaintiff's Second Interrogatories and Requests for Production, *id.* at 107–115. There, JFC International definitively identified the make and model of the pallet jack involved in the October 2018 accident as a Crown PC 4500 and indicated that it "still ha[d] in its possession identical units of the Crown PC 4500 consistent with the model used at the time of the incident." *Id.* at 92. JFC International also disclosed, for the first time, a fourth employee who witnessed the accident: Jericho Hipolito. *Id.* at 92; *see also id.* at 93–94 ("Jericho was working across from and facing

Plaintiff, approximately 15 feet away."). And last, JFC International withdrew its affirmative defense that Harris was negligent and conceded liability for the accident. *See id.* at 94, 101–03, 111 ("Defendant does not have a factual basis to claim that Danny Ti drove the pallet jack in a safe manner at the time it came into contact with Mr. Harris. Further, Defendant does not have a factual basis to claim that Mr. Harris was at fault in causing the accident.").

Singer made clear during the parties' meeting that his office had incurred time and costs serving deposition subpoenas and arranging for court reporters in connection with the Ti and Hanamoto depositions—"all of which had been done primarily to address contested liability." *Id.* at 11. He further contended that JFC International's "position on liability and late disclosure of the make and model of the pallet jack" resulted in "significant" expenses. *Id.* at 11–12. Namely, Barta (Harris's liability expert) had already completed a draft of his report and DK Global had spent extra time developing the reconstruction video without the make and model of the pallet jack. *Id.* at 6, 11–12. The parties were unable to reach agreement with respect to these issues. *Id.* at 12. Ti and Hanamoto were nonetheless deposed as planned. *Id.* at 12–13.

Four days after those depositions, Singer again emailed Christie expressing his displeasure with JFC International's alleged misconduct and demanding that JFC International cure the "adverse consequences." *Id.* at 153 ("I would like to confer as to how we might agree to remedy the financial and other consequences of JFC's position, change of position, and actions."). According to Singer, following the depositions of Ti and Hanamoto, he could now confirm that neither employee "had any knowledge of any act [Harris] ever did that was wrong and neither had any information to dispute JFC's fault." *Id.* Singer concluded his email by threatening to bring a motion if the parties could not agree on a solution. *Id.* The ensuing telephonic conferral proved unsuccessful, and the current expedited motion followed. *Id.* at 13; Dkt. No. 26 at 9.

## II.   DISCUSSION

Harris asks the Court to impose "compensatory sanctions for the monetary losses he incurred" as a result of JFC International's "factually baseless claims as to negligence" and "wrong[ful] withholding [of] important evidence of the make and model of [the] pallet jack at issue." Dkt. No. 26 at 9–10. More specifically, he seeks $10,168.27 in costs, $688.75 in paralegal fees, $18,525 in attorney fees, and $10,000 in video preparation expenses. *Id.* at 10; *see also* Dkt. No. 26-1 at 14–15 (itemizing costs for Barta and depositions of Ti and Hanamoto); *id.* at 160–63 (Barta invoices); Dkt. No. 26-2 (paralegal declaration itemizing hours); Dkt. No. 26-1 at 156–58 (attorney hours billed); *id.* at 51, 53–54 (DK Global invoice and declaration). Harris also moves the Court to exclude Hipolito's testimony at trial and rule that DK Global's reconstruction video is admissible "for all purposes at trial." Dkt. No. 26 at 10.

Harris argues that the Court may impose the requested sanctions pursuant to its inherent power and Federal Rule of Civil Procedure 37(c)(1). Dkt. No. 26 at 10–12. It is true that district courts may rely upon their inherent powers to sanction bad-faith conduct even when other statutes or rules are in place to govern the misconduct at issue. *F.J. Hanshaw Enters., Inc. v. Emerald River Dev., Inc.*, 244 F.3d 1128, 1137 (9th Cir. 2001); *accord MacNeil Auto. Prods. Ltd. v. Jinrong (SH) Auto. Accessory Dev. Co.*, No. C20-856-TSZ, 2021 WL 3674792, at *7 (W.D. Wash. Aug. 19, 2021) ("The Court has both rule-based and inherent authority to impose sanctions for litigation misconduct."). However, "it is preferable that courts use—and first consider—the range of federal rules and statutes dealing with misconduct and abuse of the judicial system[.]" *Am. Unites for Kids v. Rousseau*, 985 F.3d 1075, 1088 (9th Cir. 2021). The Court therefore addresses the propriety of the requested sanctions under both sources, beginning with Rule 37(c)(1).

1

**A.     Rule 37(c)(1)**

2          A party that has responded to an interrogatory, request for production, or request for

3   admission "must supplement or correct its disclosure or response . . . in a timely manner if the

4   party learns that in some material respect the disclosure or response is incomplete or incorrect," so

5   long as the "additional or corrective information has not otherwise been made known to the other

6   parties during the discovery process or in writing[.]" Fed. R. Civ. P. 26(e)(1)(A). And where, as

7   here, a party "fails to provide information or identify a witness" as required by Rule 26(e), that

8   party "is not allowed to use that information or witness to supply evidence . . . at trial, unless the

9   failure was substantially justified or harmless." Fed. R. Civ. P. 37(c)(1). The opposing party may

10  also move the district court to, in addition to or instead of the exclusionary sanction, "order

11  payment of the reasonable expenses, including attorney's fees, caused by the failure[.]" Fed. R.

12  Civ. P. 37(c)(1)(A). Rule 37(c)(1) "gives teeth" to Rule 26(a) and (e) and affords district courts

13  "particularly wide latitude . . . to issue sanctions" for a party's failure to meet those discovery

14  requirements. *Yeti by Molly, Ltd. v. Deckers Outdoor Corp.*, 259 F.3d 1101, 1106 (9th Cir. 2001).

15          JFC International violated Rule 26(e) when it failed to timely supplement its October 2021

16  answers and responses to Harris's First Set of Interrogatories and Requests for Production. As

17  recounted above, these discovery inquiries specifically sought information on the manufacturer,

18  make, model, and year of the pallet jack involved in the accident, as well as the identity of all

19  witnesses to the accident. Dkt. No. 26-1 at 32–33. They also requested production of any operator

20  manuals or other documents related to the pallet jack. *Id.* at 38. JFC International, however, did

21  not produce any pallet jack information or disclose Hipolito's existence until March 2023—nearly

22  a year and a half after that information was originally requested. Nor did JFC International proffer

23  an excuse for this delay beyond Christie's misguided belief that his predecessor had already

24  disclosed the pallet jack information. *See* Dkt. No. 26 at 21 (asserting that Christie "instantly"

1    disclosed the pallet jack information after realizing Singer did not have it); *id.* ("Defense counsel

2    can only speculate as to why Mr. Steinmark did not provide information in the initial discovery

3    responses about other pallet jacks in [JFC International]'s possession."). JFC International likewise

4    omitted any explanation as to why Hipolito (who was apparently fifteen feet away from the

5    accident and had a direct view of everything) was not disclosed earlier. *See* Dkt. No. 26-1 at 33–

6    34 (interrogatory answers indicating that only Ti, Harris, and Hanamoto were interviewed and

7    disclosing only those employees as witnesses to the incident).

8           The information at issue was at all times reasonably available to JFC International. Prior

9    counsel's oversight and failure to take reasonable steps to uncover it does not alter that fact. *See,*

10   *e.g.*, *Clearly Food & Beverage Co. v. Top Shelf Beverages, Inc.*, No. C13-1763-JLR, 2015 WL

11   1263339, at *3 (W.D. Wash. Mar. 18, 2015) (party violated Rule 26 because "any reasonable

12   search" would have uncovered the documents at issue months prior to disclosure); *Putz v. Golden*,

13   No. C10-0741-JLR, 2012 WL 13019220, at *4 (W.D. Wash. May 22, 2012) ("[A] party responding

14   to a Rule 34 production request . . . is under an affirmative duty to seek that information reasonably

15   available to it from its employees, agents, or others subject to its control." (cleaned up)); *Cell*

16   *Therapeutics, Inc v. Lash Grp., Inc.*, No. C07-0310-JLR, 2010 WL 11530557, at *3 (W.D. Wash.

17   Apr. 30, 2010) (party failed to supplement its disclosures in a timely manner because it "knew or

18   should have known" about the information at issue long before it made its supplemental

19   disclosures).

20          JFC International must therefore demonstrate that its delayed disclosure was either

21   substantially justified or harmless to avoid sanctions. *See R&R Sails, Inc. v. Ins. Co. of Pa.*, 673

22   F.3d 1240, 1246 (9th Cir. 2012). As for the former, a belated disclosure is substantially justified

23   only if reasonable people could disagree as to the appropriateness of withholding or delaying the

24   disclosure at issue. *See Pierce v. Underwood*, 487 U.S. 552, 565 (1988). There is no genuine

dispute as to whether JFC International should have timely searched for and disclosed the pallet jack information. Nor could fair-minded jurists disagree over whether it should have disclosed Hipolito much earlier than it did.

The Court reaches a similar conclusion with respect to harmlessness. Four factors are relevant to assessing harm: (1) prejudice or surprise to the opposing party; (2) the opposing party's ability to cure the prejudice; (3) the likelihood of disruption of the trial; and (4) the offending party's bad faith or willfulness in not timely disclosing the evidence. *Mansur Props. LLC v. First Am. Title Ins. Co.*, No. C21-05491-LK, 2022 WL 10428119, at *9 (W.D. Wash. Oct. 18, 2022); *accord Bentley v. Wells Fargo Bank, N.A.*, No. C17-0533-JCC, 2019 WL 1453578, at *3 (W.D. Wash. Apr. 2, 2019). JFC International does not address any of these factors. The Court's independent review, however, confirms that the belated disclosure of the pallet jack information was not harmless.

As for the first factor, JFC International's belated disclosure surprised and prejudiced Harris. He was led to believe for 17 months that JFC International had no knowledge of or information on the manufacturer, make, model, or year of the pallet jack involved in the accident. And DK Global pressed forward without those facts—an endeavor that cost Harris significant time and money that he would not have otherwise incurred had he known the make, model, and year of the pallet jack. Dkt. No. 26-1 at 54; *see also id.* at 5 ("During the course of creating the animation, significant extra costs and almost two months were required to research and 'customize' a model of the pallet jack to complete the video."). The second factor likewise favors a finding of harm. Harris cannot cure the prejudice he suffered here, as there is no way to undo the extra cost incurred during production of the video.

The third factor—likelihood of disruption of trial—is the only one that weighs in favor of harmlessness. Trial is set for October 2023, and roughly two months remained in discovery when

JFC International disclosed the pallet jack information. *See* Dkt. No. 17 (case schedule). The Court is hard pressed to discern how this belated disclosure poses any threat to trial. This is especially true now that JFC International has admitted negligence and only the issue of damages remains.

The final factor, however, points towards harm. "Disobedient conduct not shown to be outside the control of the litigant is sufficient to demonstrate willfulness[.]" *Hyde & Drath v. Baker*, 24 F.3d 1162, 1167 (9th Cir. 1994). As discussed above, the information at issue was reasonably available to JFC International since the accident in October 2018, and it has pointed to nothing beyond its control that prevented timely disclosure. JFC International accordingly fails to show that its delayed disclosure of the pallet jack information was harmless. That is not the case with its untimely disclosure of Hipolito. Although Harris may have been surprised and prejudiced by Hipolito's disclosure, he was afforded ample opportunity to cure the prejudice. Again, there were two months remaining in discovery at the time of disclosure—plenty of time for Harris to depose Hipolito if he wished to do so. Nor is there any discernable threat of disruption to trial. JFC International admitted negligence and this concession obviates the need for Hipolito's testimony. Indeed, JFC International indicates that it has no plans to call Hipolito at trial. Dkt. No. 26 at 23. Thus, even if the delayed disclosure of Hipolito was willful, *see Hyde*, 24 F.3d at 1167, on balance the factors do not compel exclusion of his testimony, *see Merchant v. Corizon Health, Inc.*, 993 F.3d 733, 740 (9th Cir. 2021) (a district court is not required to exclude evidence that runs afoul of Rule 26(a) or (e); rather, it may do so if the offending party fails to show that its discovery violation was substantially justified or harmless).

JFC International must pay the reasonable expenses, including attorney fees, caused by its delayed disclosure of the pallet jack information. Harris seeks $10,000 in costs plus $500 for two hours of attorney time. *See* Dkt. No. 26 at 10, 25–26. However, he fails to justify his requests for costs and fees related to the second phase of work on the accident reconstruction video—i.e., the

1    remake of the video. Specifically, Harris fails to explain why a remake to show the correct make

2    and model is necessary, especially considering that the costs were incurred after JFC International

3    conceded negligence on March 14, 2023. *Id.* at 51, 94, 100–03. As JFC International points out,

4    DK Global's invoices suggest that the remake is necessary principally because the original video

5    incorrectly depicted Ti's position. Dkt. No. 26 at 22; Dkt. No. 26-1 at 51 (DK Global invoice

6    stating that "[t]he driver of the pallet jack will be depicted standing on the platform with one hand

7    on the T-handle, the other hand on the opposing side, with his back pointed towards [Harris]" and

8    "[t]he animation will be re-rendered . . . with the . . . new operator position."). The Court therefore

9    awards only those fees and costs attributable to the lack of information regarding the pallet jack

10    incurred in the original creation of the video: $5,000 in costs and half an hour in attorney fees. Dkt.

11    No. 26-1 at 54 ("Approximately $10,000 would have been saved *between the original work and*

12    *the second phase of work* had the make and model of the pallet jack been known when the project

13    originally began." (Emphasis added)); *id.* at 156 (first time entry).

14    **B.**    **Inherent Power**

15          The Court next considers sanctions pursuant to its inherent power. When the Federal Rules

16    of Civil Procedure do not adequately sanction bad-faith conduct, a district court may rely on its

17    inherent power to do so. *Chambers v. NASCO, Inc.*, 501 U.S. 32, 50 (1991). This includes the

18    authority to order a party "to reimburse legal fees and costs incurred by the other side." *Goodyear*

19    *Tire & Rubber Co. v. Haeger*, 581 U.S. 101, 107 (2017). A district court must, however, "exercise

20    caution in invoking its inherent power" and "must comply with the mandates of due process[.]"

21    *Chambers*, 501 U.S. at 50; *see also Roadway Express, Inc. v. Piper*, 447 U.S. 752, 764 (1980)

22    ("Because inherent powers are shielded from direct democratic controls, they must be exercised

23    with restraint and discretion."). This means that a fee award must be compensatory in nature and

24    "may go no further than to redress the wronged party for losses sustained[.]" *Goodyear*, 581 U.S.

at 108 (cleaned up). In other words, the complaining party may recover only those legal bills that would not have been incurred but for the misconduct at issue. *Id.* at 108–09.

"When acting under its inherent authority to impose a sanction, as opposed to applying a rule or statute, a district court must find either: (1) a willful violation of a court order; or (2) bad faith." *Rousseau*, 985 F.3d at 1090. At issue here is whether JFC International acted in bad faith by refusing to concede negligence until March 2023. Specifically, Harris contends that JFC International "made two baseless, factually devoid claims" by maintaining that (1) Ti was not negligent and (2) Harris was. Dkt. No. 26 at 10 ("JFC knew or should reasonably have known no evidence ever supported these [arguments] and they were improper to maintain."). The Ninth Circuit requires the sanctioning court to "make an explicit finding that the sanctioned party's conduct constituted or was tantamount to bad faith." *Rousseau*, 985 F.3d at 1090 (cleaned up). The movant bears the burden of showing bad faith. *MacNeil*, 2021 WL 3674792, at *8.

Bad faith may be found in a party's litigation conduct. *Rousseau*, 985 F.3d at 1090. But "bad faith, including conduct done vexatiously, wantonly, or for oppressive reasons, requires proof of bad intent or improper purpose." *Id.* This is a "high threshold." *Primus Auto. Fin. Servs., Inc. v. Batarse*, 115 F.3d 644, 649 (9th Cir. 1997). Recklessness alone is insufficient to justify sanctions; rather, it must be combined with "something more," such as "frivolousness, harassment, or an improper purpose." *Fink v. Gomez*, 239 F.3d 989, 993–94 (9th Cir. 2001); *B.K.B. v. Maui Police Dep't*, 276 F.3d 1091, 1108 (9th Cir. 2002). Thus, "[b]ad faith is present when [a party] knowingly or recklessly raises a frivolous argument[.]" *Moore v. Keegan Mgmt. Co. (In re Keegan Mgmt. Co., Sec. Litig.)*, 78 F.3d 431, 436 (9th Cir. 1996). Sanctions are "reserved for the rare and exceptional case" involving an argument that is "clearly frivolous" or "legally unreasonable or without legal foundation[.]" *Primus*, 115 F.3d at 649 (cleaned up).

1        The Ninth Circuit has not addressed whether a movant must show bad faith by a

2   preponderance of the evidence or clear and convincing evidence. *See, e.g.*, *Lahiri v. Universal*

3   *Music & Video Distrib. Corp.*, 606 F.3d 1216, 1219 (9th Cir. 2010). The record in this case,

4   however, provides clear and convincing evidence that JFC International acted in bad faith when it

5   continued to deny liability in the wake of Harris's February 9, 2023 deposition. *See Knickerbocker*

6   *v. Corinthian Colls.*, 298 F.R.D. 670, 677 (W.D. Wash. 2014) ("[I]t is clear that a bad faith finding

7   supported by clear and convincing evidence will suffice."). JFC International knew or reasonably

8   should have known after his deposition that there was no evidence supporting its affirmative

9   defense. And yet, it refused to admit that Ti negligently operated the pallet jack—and instead

10  maintained that Harris may have been negligent—until March 14, 2023.

11       To be sure, district courts must avoid the wisdom of hindsight when assessing frivolity and

12  should instead ask what was reasonable to believe at the relevant juncture. *Operating Eng'rs*

13  *Pension Tr. v. A-C Co.*, 859 F.2d 1336, 1344 (9th Cir. 1988). And here it was reasonable for JFC

14  International to withhold any admission as to liability until it explored all sources of information

15  beyond its control, i.e., until it deposed Harris.[3] Not once did JFC International cite any other

16  evidence in support of its contention that Harris may have been negligent beyond a conclusory

17  assertion that there were "issues of fact over whether Mr. Harris was inattentive to the moving

18  pallet jack and/or whether he may have been in a recognized lane of travel for the equipment."

19  Dkt. No. 26-1 at 68, 78; *see also* Fed. R. Civ. P. 36(a)(5) ("A party must not object solely on the

20  ground that the request presents a genuine issue for trial."); *Marchand v. Mercy Med. Ctr.*, 22 F.3d

21

22  _____

23  [3] Notably, JFC International's admission of liability prior to the depositions of Ti and Hanamoto confirms that it knew (and reasonably should have known) that neither Ti nor Hanamoto had any information to suggest Harris was negligent. *See* Dkt. No. 26 at 25 (noting that JFC International served its supplemental discovery responses on the morning of Ti's deposition); *id.* at 8 (Christie spoke with Ti for the first time the day before his deposition); Dkt. No.

24  26-1 at 10–13 (Singer declaration recounting timing of disclosure and depositions).

933, 936 (9th Cir. 1994) ("Parties may not view requests for admission as a mere procedural exercise requiring minimally acceptable conduct. They should focus on the goal of the Rules, full and efficient discovery, not evasion and word play.").[4] Once Harris was deposed, it was "both reckless and frivolous" for JFC International to continue to assert its affirmative defense and deny liability without any supporting evidence. *Primus*, 115 F.3d at 649.

JFC International must therefore pay the reasonable costs and attorney fees that Harris would not have incurred but for its bad faith refusal to concede liability. *See Goodyear*, 581 U.S. at 108–09. This includes the costs and fees Harris unnecessarily incurred (1) in the creation of the accident reconstruction video due to lacking pallet jack information and (2) on liability-related tasks between February 10, 2023 (the day after Harris's deposition)[5] and March 14, 2023 (JFC International's admission of liability).

Harris seeks to collect $8,250 in fees associated with Barta and his expert opinion, Dkt. No. 26-1 at 7–8, 14, 160–63, $1,918.27 in costs associated with the depositions of Ti and Hanamoto, *id.* at 8, 15, and 74.1 hours of attorney time and 7.25 hours of paralegal time, Dkt. No. 26 at 10; Dkt. No. 26-1 at 13, 156–58, Dkt. No. 26-2 at 1–2, 4. JFC International does not dispute the validity of these amounts, but instead suggests that expenses related to the Ti and Hanamoto depositions would have been incurred regardless of its delay in conceding liability. Specifically, JFC International argues that the two depositions were independently "important to finding out the details of the accident," and that Harris "could have re-noted the depositions of Mr. Ti and Mr. Hanamoto for a later date or stricken them entirely." Dkt. No. 26 at 21.

---

[4] In October 2021, JFC International disclosed Hanamoto's incident statement and Ti's "Incident and Injury Investigation Form." *See* Dkt. No. 26-1 at 3, 44, 46–47. Neither contains any suggestion that Harris's negligence contributed to the accident.

[5] The Court finds that under these circumstances, JFC International would have satisfied its duty to "supplement or correct its disclosure or response . . . in a timely manner" by providing its supplemental responses by February 10, 2023. Fed. R. Civ. P. 26(e)(1)(A).

It indeed appears that Ti's deposition was independently valuable to Harris. Following that deposition, and even after JFC International conceded liability, Harris sought to redo the accident reconstruction video to reflect information obtained during Ti's deposition. Dkt. No. 26-1 at 51. And JFC International is correct that Harris could have mitigated his damages by canceling Hanamoto's deposition. The Court accordingly does not award fees or costs relating to Ti's deposition and does not award fees or costs incurred for Hanamoto's deposition after JFC International's admission of liability. However, it does award fees and costs for work with Barta between February 10, 2023 and March 14, 2023, for preparing the Rule 37 motion, and for Hanamoto's deposition between February 10, 2023 and March 13, 2023. The Court discusses the reasonableness of Singer's hours, the paralegal's hours, and their rates below.

## C.    Reasonableness of Attorney Fees

District courts calculate attorney fee awards using the two-step lodestar method. *Camacho v. Bridgeport Fin., Inc.*, 523 F.3d 973, 978 (9th Cir. 2008). "First, the court must calculate the 'lodestar figure' by taking the number of hours reasonably expended on the litigation and multiplying it by a reasonable hourly rate." *Fischer v. SJB-P.D. Inc.*, 214 F.3d 1115, 1119 (9th Cir. 2000). "Second, the court must decide whether to enhance or reduce the lodestar figure based on an evaluation of the *Kerr* factors that are not already subsumed in the initial lodestar calculation." *Id.*; *see Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67, 70 (9th Cir. 1975) (enumerating 12 factors to consider), *abrogated on other grounds by City of Burlington v. Dague*, 505 U.S. 557 (1992).

A district court should not, however, prophylactically apply the *Kerr* factors in every case. *See Cairns v. Franklin Mint. Co.*, 292 F.3d 1139, 1158 (9th Cir. 2002). "[T]here is a 'strong presumption' that the lodestar figure is reasonable," *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 554 (2010), because the *Kerr* factors "are largely subsumed within the initial calculation of

reasonable hours expended at a reasonable hourly rate, rather than the subsequent determination of whether to adjust the fee upward or downward," *Chalmers v. City of Los Angeles*, 796 F.2d 1205, 1212 (9th Cir. 1986); *see also Pennsylvania v. Del. Valley Citizens' Council for Clean Air*, 478 U.S. 546, 565–66 (1986) (a departure from the lodestar figure is permitted "only in certain rare and exceptional cases, supported by both specific evidence on the record and detailed findings[.]" (cleaned up)); *Ballen v. City of Redmond*, 466 F.3d 736, 746 (9th Cir. 2006) ("We have previously said that only in rare circumstances should a court adjust the lodestar figure, as this figure is the presumptively accurate measure of reasonable fees.").

1. Reasonable Rate

Reasonable fees "are to be calculated according to the prevailing market rates in the relevant community[.]" *Blum v. Stenson*, 465 U.S. 886, 895 (1984). The relevant community is the forum in which the district court sits. *Camacho*, 523 F.3d at 979. Although "determining an appropriate 'market rate' for the services of a lawyer is inherently difficult," *Blum*, 465 U.S. at 895 n.11, the Court is "guided by the rate prevailing in the community for similar work performed by attorneys of comparable skill, experience, and reputation," *Chalmers*, 796 F.2d at 1210–11. Harris is the fee applicant and therefore bears the burden of producing "satisfactory evidence—in addition to the attorney's own affidavits—that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation." *Blum*, 465 U.S. at 895 n.11. And as the party opposing fees, JFC International must rebut Harris's request by submitting evidence to the Court "challenging the accuracy and reasonableness of the . . . facts asserted by [Harris] in [his] submitted affidavits." *Gates v. Deukmejian*, 987 F.2d 1392, 1397–98 (9th Cir. 1992).

The Ninth Circuit has made clear that "satisfactory evidence" of market rates includes "[a]ffidavits of the plaintiffs' attorney and other attorneys regarding prevailing fees in the

community, and rate determinations in other cases, particularly those setting a rate for the plaintiffs' attorney[.]" *United Steelworkers of Am. v. Phelps Dodge Corp.*, 896 F.2d 403, 407 (9th Cir. 1990). The Court may also rely on its own knowledge and familiarity with the legal market in setting a reasonable rate. *Ingram v. Oroudjian*, 647 F.3d 925, 928 (9th Cir. 2011) (per curiam). When, however, the Court turns to rate determinations in other cases, it may not rely on cases "decided years before the attorneys actually rendered their services." *Camacho*, 523 F.3d at 981; *see, e.g.*, *Bell v. Clackamas Cnty.*, 341 F.3d 858, 869 (9th Cir. 2003) (district court abused its discretion in applying market rates in effect more than two years before the work at issue was performed). Nor do declarations filed by the fee applicant "conclusively establish the prevailing market rate." *Camacho*, 523 F.3d at 980.

Harris seeks $250 per hour for Singer. Dkt. No. 26-1 at 14. Singer has been practicing law for "nearly 30 years overall," and has specifically practiced in Washington for "over 21" of those years. *Id.* His attorney biography indicates that he "concentrates his practice on personal injury cases" and previously "gained significant experience as a criminal prosecutor" and "an associate attorney with a large Seattle insurance defense firm, where he represented clients in litigation before both Washington state and federal courts." https://www.tseytinlaw.com/attorney/singer-alan/ (last visited May 16, 2023). Singer's experience also includes serving as a staff attorney for the Washington State Insurance Commissioner and "an attorney in litigation staff counsel offices for Washington's largest automobile insurance companies," where he "successfully handled hundreds of cases for individual clients and insurers involving automobile accidents and premises liability claims." *Id.*

Singer's requested rate is considerably lower than the prevailing market rate for personal injury cases involving attorneys with comparable experience. *See, e.g.*, *Hawkins v. Ace Am. Ins. Co.*, No. 21-CV-01459-RAJ, 2023 WL 2584909, at *1–2 (W.D. Wash. Mar. 21, 2023) (approving

rate of $500-$600 for attorney with over 20 years of experience in personal injury case); *Cockrum v. C.H. Murphy/Clark-Ullman LLC, Inc.*, No. 22-CV-1515, 2023 WL 2401927, at *1–2 (W.D. Wash. Mar. 8, 2023) (approving $350 an hour for attorney with seven years of experience in asbestos exposure litigation and $650 an hour for attorney with 30 years of experience in asbestos litigation). JFC International has not produced any declarations, other evidence, or even argument challenging the reasonableness of Singer's proposed rate. *See Camacho*, 523 F.3d at 980 (the party opposing the fee application has the burden of rebuttal that requires submission of evidence challenging the accuracy and reasonableness of the submitted hours); *Netlist Inc. v. Samsung Elecs. Co.*, 341 F.R.D. 650, 676 (C.D. Cal. 2022) (finding rates reasonable where opposing party failed to provide any declaration challenging proposed rates). Considering precedent in conjunction with counsel's experience in this subject matter and the Court's knowledge and familiarity with the local market, the Court finds Singer's proposed rate of $250 per hour reasonable.

Harris also seeks $95 per hour for Singer's paralegal, Robert Diamond. *See* Dkt. No. 26-2 at 2; *McEuen v. Riverview Bancorp, Inc.*, No. C12-5997-RJB, 2014 WL 2197851, at *4 (W.D. Wash. May 27, 2014) ("Paralegal fees are properly considered a part of an attorney fee award and are to be assessed at market rates that prevail in the community."). Diamond completed a paralegal program at Tacoma Community College and received an Associate Degree in Applied Arts and Sciences in 2008. Dkt. No. 26-2 at 1. He has been a paralegal in Washington State since 2007 and, during that time, worked for firms that specialize in personal injury, workers' compensation, and collections. *Id.* The Court finds Diamond's proposed rate reasonable based on its knowledge and familiarity with the local market, as well as paralegal rates approved in other recent cases. *See, e.g.*, *Saunders v. Schweinhaus, Inc.*, No. 2:22-CV-00074-RAJ, 2022 WL 17820566, at *2 (W.D. Wash. Dec. 20, 2022) (awarding $150 per hour for paralegal work); *Paulson v. Principal Life Ins.*

1    *Co.*, No. 16-5268-RJB, 2017 WL 4843837, at *4 (W.D. Wash. Oct. 26, 2017) ($185 per hour);

2    *Johnson v. CitiMortgage, Inc.*, No. 2:13-CV-00037-RSM, 2014 WL 2207619, at *3 (W.D. Wash.

3    May 28, 2014) ($125 per hour).

4          2.   Hours Reasonably Expended

5          Harris again "bears the burden of documenting the appropriate hours expended in the

6    litigation and must submit evidence in support of those hours worked." *Welch v. Metro. Life Ins.*

7    *Co.*, 480 F.3d 942, 948 (9th Cir. 2007). And, as with the hourly rate, JFC International "has a

8    burden of rebuttal that requires submission of evidence to the district court challenging the

9    accuracy and reasonableness of the hours charged[.]" *Deukmejian*, 987 F.2d at 1397–98. It must

10   "specifically identify[] defects or deficiencies in the requested hours" because "conclusory or

11   unsubstantiated objections [are] insufficient to warrant a reduction." *Bidwal v. Unifund CCR*

12   *Partners*, No. 3:17-CV-02699-LB, 2019 WL 4039955, at *9 (N.D. Cal. Aug. 27, 2019). The Court

13   typically defers "to the winning lawyer's professional judgment as to how much time he was

14   required to spend on the case," *Moreno v. City of Sacramento*, 534 F.3d 1106, 1112 (9th Cir. 2008),

15   but it does not "uncritically accept counsel's representations concerning the time expended,"

16   *Jordan v. Multnomah Cnty.*, 815 F.2d 1258, 1263 n.8 (9th Cir. 1987). The Court will therefore

17   "exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary[.]"

18   *Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983).

19         All 19.6 hours Singer spent between Harris's deposition and JFC International's admission

20   of liability were reasonable. The Court has conducted an item-by-item review of Singer's

21   timesheet and the descriptions for each liability-related entry. *See* Dkt. No. 26-1 at 156–58

22   (timesheet). Those entries are sufficiently detailed for the Court to evaluate their reasonableness

23   in the context of this litigation. However, although the time Singer expended was reasonable, not

24   all of it is compensable in light of the Court's determinations above. The Court accordingly awards

Harris 47.1 hours for Singer's work, as depicted in the table below (time altered or not awarded is stricken through):

| Date | Work performed | Time | Time awarded |
|---|---|---|---|
| 12/7/2022 | Zoom consult with DK Global regarding video and plan to obtain specially modeled pallet jack for video | 0.5 | 0.5 |
| ~~2/6/2023~~ | ~~Draft RFAs to JFC~~ | ~~0.9~~ | - |
| ~~2/6/2023~~ | ~~Draft and sign 2nd ROGs RFPs to JFC~~ | ~~2.4~~ | - |
| ~~2/7/2023~~ | ~~Finalize RFAs and sign to JFC~~ | ~~0.4~~ | - |
| ~~2/7/2023~~ | ~~Email JFC with RFAs and 2nd ROGs RFPs to JFC~~ | ~~0.1~~ | - |
| ~~2/9/2023~~ | ~~Draft and sign 3rd ROGs RFPs to JFC~~ | ~~0.5~~ | - |
| ~~2/9/2023~~ | ~~Receive and review CV and W9 from Nick Barta~~ | ~~0.2~~ | - |
| ~~2/9/2023~~ | ~~Research and review information about potential liability expert, Nick Barta~~ | ~~0.4~~ | - |
| ~~2/9/2023~~ | ~~Client communication regarding liability and potential expert Nick Barta~~ | ~~0.1~~ | - |
| ~~2/9/2023~~ | ~~Telephone call with Nick Barta~~ | ~~0.4~~ | - |
| 2/10/2023 | Review and prepare materials and develop plan for engagement of Nick Barta | 1.5 | 1.5 |
| 2/10/2023 | Telephone call with Nick Barta | 0.3 | 0.3 |
| 2/10/2023 | Prepare for expert Nick Barta an overview of the form of disclosure of opinions needed | 0.1 | 0.1 |
| 2/10/2023 | Review and sign retention agreement for Nick Barta | 0.2 | 0.2 |
| 2/10/2023 | Review and draft email to Nick Barta | 0.1 | 0.1 |
| 2/10/2023 | Talk with Nick Barta and review documents | 1 | 1 |
| 2/13/2023 | Plan arrangements to set Zoom call with liability expert Nick Barta | 0.3 | 0.3 |
| 2/13/2023 | Email Nick Barta re Zoom call | 0.1 | 0.1 |
| 2/13/2023 | Review and respond to email to Nick Barta re Zoom call | 0.1 | 0.1 |
| 2/13/2023 | Respond to email to Nick Barta re Zoom call | 0.1 | 0.1 |
| 2/15/2023 | Direct setup of depositions of Hanamoto and Ti | ~~0.2~~ | 0.1 |
| 2/15/2023 | Review correspondence with opposing counsel re depositions Hanamoto and Ti | ~~0.3~~ | 0.15 |
| 2/15/2023 | Direct in person depositions Ti and Hanamoto | ~~0.2~~ | 0.1 |
| 2/16/2023 | Research regarding deposition pleadings (notices and subpoenas) for Ti and Hanamoto | ~~0.3~~ | 0.15 |
| 2/16/2023 | Zoom call with Nick Barta and client | 0.9 | 0.9 |
| 2/16/2023 | Research and review pallet jack information discussed with Nick Barta | 0.3 | 0.3 |
| 2/21/2023 | Meet and confer with Bob Christie - in part address liability | 0.1 | 0.1 |
| 2/21/2023 | Email JFC counsel - in part re liability | 0.1 | 0.1 |
| 2/21/2023 | Search for and assemble additional materials for Nick Barta | 1.2 | 1.2 |
| 2/21/2023 | Receive and review emails re depositions of Ti and Hanamoto | ~~0.2~~ | 0.1 |

| | | | |
|---|---|---|---|
| ~~2/21/2023~~ | ~~Research Danny Ti's COPD for setting and taking his deposition (JFC counsel's office stated he had COPD and could not take part in a deposition)~~ | ~~0.2~~ | - |
| ~~2/21/2023~~ | ~~Direct response email re deposition of Danny Ti and COPD issue~~ | ~~0.3~~ | - |
| 2/21/2023 | Review respond to emails re depositions of Ti and Hanamoto | ~~0.2~~ | 0.1 |
| 2/21/2023 | Email to Nick Barta with materials | 0.4 | 0.4 |
| 2/22/2023 | Review file for video to provide to Nick Barta | 0.3 | 0.3 |
| 2/22/2023 | Email of video to Nick Barta | 0.2 | 0.2 |
| 2/22/2023 | Research additional pallet jack information to give to Nick Barta | 0.7 | 0.7 |
| 2/23/2023 | Receive and respond to email from Nick Barta with links to information | 0.3 | 0.3 |
| 2/23/2023 | Research locations and plan logistics of deposition Hanamoto in Snohomish county | 0.5 | 0.5 |
| 2/23/2023 | Telephone call with Nick Barta re his review of materials thus far | 0.5 | 0.5 |
| 2/24/2023 | Direct subpoena service for Ti/Hanamoto and review documents for service | ~~0.2~~ | 0.1 |
| 2/24/2023 | Plan court reporters and videographer for Ti and Hanamoto depositions | ~~0.2~~ | 0.1 |
| 2/24/2023 | Received and review email regarding planning for depositions of Ti and Hanamoto | ~~0.1~~ | 0.05 |
| 2/27/2023 | Telephone call Nick Barta | 0.1 | 0.1 |
| 2/27/2023 | Review proof of service of Ti and Hanamoto for depositions | ~~0.1~~ | 0.05 |
| 2/27/2023 | Direct and review payment of witness fees Hanamoto and Ti | ~~0.3~~ | 0.15 |
| 2/27/2023 | Review billing re Nick Barta | 0.1 | 0.1 |
| 2/28/2023 | Telephone call Nick Barta regarding materials, facts, issues regarding pallet operation and safety training | 0.7 | 0.7 |
| 2/28/2023 | Telephone call Nick Barta | 0.1 | 0.1 |
| 3/1/2023 | Review correspondence re witness fees for Ti and Hanamoto depositions | ~~0.1~~ | 0.05 |
| 3/3/2023 | Zoom with Bob Christie re liability and discovery issues | 0.5 | 0.5 |
| 3/8/2023 | Receive and review JFC discovery responses received today | 1 | 1 |
| 3/9/2023 | Email opposing counsel to set meet and confer | 0.2 | 0.2 |
| 3/10/2023 | Meet and confer over JFC discovery and prejudice | 1.5 | 1.5 |
| 3/13/2023 | Review materials received from Nick Barta and arrange to pick up model information f | 0.3 | 0.3 |
| ~~3/13/2023~~ | ~~Review and prepare exhibits and question outline for deposition of Danny Ti~~ | ~~3.5~~ | |
| 3/13/2023 | Begin reviewing documents and deposition outline for Taiki Hanamoto | 0.3 | 0.3 |
| 3/14/2023 | Meet and confer w JFC atty Bob Christie | 0.3 | 0.3 |
| 3/14/2023 | Review new supplemental discovery from JFC received this morning | 0.3 | 0.3 |
| 3/14/2023 | Direct Nick Barta to stop work | 0.1 | 0.1 |
| ~~3/14/2023~~ | ~~Prepare for deposition Danny Ti~~ | ~~2.2~~ | |
| ~~3/14/2023~~ | ~~Depose Danny Ti~~ | ~~1.5~~ | |
| 3/14/2023 | Change expert disclosure re Nick Barta | 0.3 | 0.3 |
| ~~3/14/2023~~ | ~~Prepare for deposition Taiki Hanamoto~~ | ~~2~~ | - |

| Date | Description | | |
|---|---|---|---|
| ~~3/15/2023~~ | ~~Re-plan deposition location for Taiki Hanamoto - original location now unavailable~~ | ~~0.5~~ | - |
| ~~3/15/2023~~ | ~~Travel to and from deposition Taiki Hanamoto in Snohomish library~~ | ~~5.2~~ | - |
| 3/15/2023 | Plan to get Nick Barta report for disclosure | 0.3 | 0.3 |
| 3/16/2023 | Email to Bob Christie to set a meet and confer to try to resolve prejudice from JFC discovery issues | 0.6 | 0.6 |
| 3/23/2023 | Meet and confer - motion needed no agreement | 0.3 | 0.3 |
| ~~4/3/2023~~ | ~~Contact DK Global re cost for adding pallet jack to video~~ | ~~0.2~~ | - |
| ~~4/3/2023~~ | ~~Confer with Cameron Thies re edit to video with newly disclosed palletjack~~ | ~~0.5~~ | - |
| ~~4/4/2023~~ | ~~Receive and review new estimate of $13,612.50 to add pallet jack~~ | ~~0.1~~ | - |
| 4/4/2023 | Begin to draft and edit Alan Singer declaration supporting motion | 0.2 | 0.2 |
| 4/4/2023 | Research rules and orders to prepare a motion for sanctions | 1.3 | 1.3 |
| 4/4/2023 | Begin drafting and editing the motion's fact section | 3.5 | 3.5 |
| 4/5/2023 | Continue drafting and editing Alan Singer declaration by assembling and highlighting exhibits | 4 | 0[6] |
| 4/5/2023 | Review some potentially pertinent email and identify some which should be used as exhibits for Alan Singer declaration | 0.4 | 0.4 |
| 4/5/2023 | Draft and provide a draft declaration to Cameron Thies at DK Global | 0.6 | 0.6 |
| 4/5/2023 | Receive and review final signed declaration Cameron Thies | 0.1 | 0.1 |
| 4/5/2023 | Continue drafting and editing Alan Singer declaration, adding and editing exhibits | 3.1 | 3.1 |
| 4/6/2023 | Continue drafting and editing Alan Singer declaration based on exhibits | 2.9 | 2.9 |
| 4/6/2023 | Review, select, and highlight Ti and Hanamoto deposition excerpts to include in Alan Singer declaration | ~~0.4~~ | 0.2 |
| 4/6/2023 | Begin drafting and editing this exhibit 20 (this document) | 1.2 | 1.2 |
| 4/6/2023 | Continue writing, editing and revising the 'statement of facts' section of the motion | 5 | 5 |
| 4/7/2023 | Finish writing, revising, and editing the fact section of the motion | 3.5 | 3.5 |
| 4/7/2023 | Research federal authority supporting orders for costs and fees | 2.1 | 2.1 |
| 4/7/2023 | Continue drafting motion, argument section, on sanctions authority | 1.9 | 1.9 |
| 4/7/2023 | Finish drafting motion | 2 | 2 |
| 4/7/2023 | Draft proposed order | 1.1 | 1.1 |
| **Total hours** | | **74.1** | **47.1** |

Diamond's timesheet contains several entries that are non-legal or clerical in nature and thus not compensable. *See* Dkt. No. 26-2 at 4. "Purely clerical tasks are not recoverable at attorney or paralegal rates." *Mendoza v. Brewster Sch. Dist. No. 111*, 469 F. Supp. 2d 905, 915 (E.D. Wash.

---

[6] The Court reduces Singer's time on the motion and related documents by four hours since some time was devoted to requesting compensation for work the Court did not find to be compensable.

2006) (citing *Missouri v. Jenkins*, 491 U.S. 274, 109 (1989)). Diamond seeks .25 hours for "[l]ocating Taiki Hanamoto for service"; .25 hours for "[l]ocating Danny Ti for service"; one hour for "[l]ocating and securing location for Hanamoto deposition"; .25 hours for "[c]ommunicating with process server and forwarding service documents"; .75 hours for "[t]ravel to/from Tukwila post office to mail witness fee correspondence"; and one hour for "[p]ick up models from expert at 7060 Oberto Drive in Kent (residence to Kent, then to office)." Dkt. No. 26-2 at 4. The Court declines to approve these hours because they are clerical in nature. *See, e.g.*, *Conti v. Corp. Servs. Grp., Inc.*, 30 F. Supp. 3d 1051, 1080 (W.D. Wash. 2014) (declining to award compensation for assembling exhibits, organizing discovery documents, traveling to opposing counsel's office, drafting correspondence enclosing a witness fee check, and delivering letters). In addition, the Court reduces by half Diamond's one-hour entry for drafting subpoenas and deposition notices for Ti and Hanamoto because the Court does not award fees related to Ti's deposition. Dkt. No. 26-2 at 4. After excluding these hours, the Court approves 4.25 hours of Diamond's work for a total of $403.75. *Id.*

### 3.  Adjustment Under the *Kerr* Factors

Harris does not press for an enhancement of the lodestar figure. Nor does JFC International contend that a downward adjustment is necessary. The Court likewise discerns no grounds in the record to justify a departure from the lodestar amount in this case. That amount is reasonable and adequately accounts for counsel's skill level and performance given the issues presented here. *See Perdue*, 559 U.S. at 554 (the lodestar figure is presumptively reasonable); *Ballen*, 466 F.3d at 746 (the lodestar should be adjusted only in rare cases).

### 4.  Fees Associated with Drafting the Motion for Sanctions

Singer's timesheet itemizes 32.6 hours he spent drafting the joint motion for sanctions and preparing his declaration and supporting exhibits. *See* Dkt. No. 26-1 at 158. A party may recover

attorney fees incurred in moving for Rule 37(c)(1) sanctions. *See Putz*, 2012 WL 13019220, at *6. A district court may also award fees attributable to the opposing party's bad faith, including fees that are incurred drafting a motion for sanctions. *Knickerbocker*, 298 F.R.D. at 682; *Guerra v. United States*, 75 F. Supp. 3d 1276, 1283 (W.D. Wash. 2014).

Here again, JFC International fails to challenge the hours Singer expended on the parties' joint motion. The reasonableness of hours expended on a motion for sanctions and fees varies depending on the complexity of the issues.[7] There is nothing complex or novel about this case or the issues presented in the joint motion; however, given Harris's considerable success, the Court concludes that Singer's compensable timesheet entries (detailed above) are reasonable.

As depicted in the following tables, Harris is entitled to $12,178.75 in attorney fees and $13,225 in other costs and expenses, for a total of $25,403.75.

| Attorney/Paralegal | Rate | Hours | Lodestar |
|---|---|---|---|
| Alan Singer | $250 | 47.1 | $11,775 |
| Robert Diamond | $95 | 4.25 | $403.75 |
| **Total** | | | **$12,178.75** |

| Expense | Reason |
|---|---|
| $5,000 | Video expense due to untimely disclosure of pallet jack information |
| $8,130 | Nick Barta expert fees[8] |
| $95 | Process service for Hanamoto (other costs associated with this deposition are not compensable because they were incurred after JFC International admitted liability) |
| **$13,225** | **Total** |

---

[7] *See, e.g.*, *HDT Bio Corp. v. Emcure Pharms., Ltd.*, No. C22-0334-JLR, 2022 WL 17668036, at *4 (W.D. Wash. Dec. 14, 2022) (finding 182.9-hour request for Rule 37 motion excessive where legal issues were "not especially complex or novel," and awarding 45.73 hours); *O'Kell v. Haaland*, No. 2:18-CV-00279-SAB, 2022 WL 19571657, at *3 (E.D. Wash. July 8, 2022) (finding reasonable 41.10 hours spent preparing fee motion in ADEA case); *Block v. Wash. State Bar Ass'n*, No. C15-2018-RSM, 2016 WL 1621689, at *2 (W.D. Wash. Apr. 22, 2016) (reducing 76.9 hours claimed for a motion for sanctions by one half where issues were straightforward and attorneys were experienced); *Knickerbocker v. Corinthian Colls.*, No. C12-1142-JLR, 2014 WL 3927227, at *3 (W.D. Wash. Aug. 12, 2014) (finding 44 hours billed for fee motion excessive and reducing total award to 15 hours); *Maclay v. M/V SAHARA*, No. C12-512-RSM, 2012 WL 6552762, at *3 (W.D. Wash. Dec. 14, 2012) (finding reasonable 23.1 hours spent on 14-page motion for Rule 37 sanctions, five-page proposed order, and eight-page supporting declaration).

[8] Reduced by 0.4 hours because the Court does not compensate the initial phone conversation on February 9, 2023. Dkt. No. 26-1 at 160; *id.* at 156.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

**D.      Admissibility of Reconstruction Video**

Harris last urges the Court to rule that DK Global's accident reconstruction video is "admissible for all purposes at trial." Dkt. No. 26 at 10; *see also id.* at 26 ("[T]he Court should order the video admissible without further expense."). To the extent Harris suggests that this relief is a proper sanction for JFC International's untimely disclosure of the pallet jack information or bad faith refusal to admit liability, the Court disagrees. The admissibility of the video is not the proper subject of this joint motion for sanctions. Nor, in any event, do the parties provide substantive argument as to the video's admissibility. The Court therefore denies Harris's request without prejudice to renew. The parties may litigate this issue in their motions in limine.

### III.   CONCLUSION

For the foregoing reasons, the Court GRANTS IN PART and DENIES IN PART the parties' LCR 37 Joint Submission Regarding Plaintiff's Motion for Sanctions and Relief and Defendant's Opposition. Dkt. No. 26.

Dated this 5th day of June, 2023.

Lauren King
United States District Judge